Thank you, Your Honor. Michael Subit representing Appellant Ron Jackson, who is with me at counsel table. I request five minutes for rebuttal. Just watch your time and stop when you have five minutes left or so. Thank you, Your Honor. This is a case about due process. Due process prohibits the imposition of dismissal as a sanction for deceptive misconduct unrelated to the merits of the underlying legal claims. This Court first held that in the Faucine case and later reiterated this in the Thalestead case where Judge Ferguson was a member of the panel. It is for this reason that the Court has later held in the Halico case that the most important criterion in terms of whether or not dismissal under inherent powers is appropriate is whether or not the misconduct penalized threatened to interfere with the rightful decision of the underlying case. The Court has called this the nexus requirement. That nexus is entirely absent here. Whether or not Mr. Jackson obtained CDs from Microsoft without authorization and who he got them from simply has no impact on whether or not Microsoft discriminated against him on the basis of race. Well, let's let's explore that for a minute. I thought that the district court and whether this is right or wrong, you'll comment. But I thought the district court thought there was a clear nexus between this information and the case because some share of the data was personnel data. In other words, you've got a discrimination suit and somebody steals the supervisor's files, including personnel files, whether it's the outlook file and that includes not only general information about personnel matters, but specific communications in which Microsoft managers or counsel are commenting about Mr. Jackson's discrimination complaint. Why isn't that a nexus with the case? Because that's not the way this Court has used the term nexus and its precedents. Mr. Jackson, the nexus has been found only where one party has manufactured evidence helpful to its case or suppressed evidence helpful to his adversary's case. That's not what happened. Nexus between the misconduct and the underlying case is not found simply because that some of the evidence Mr. Jackson obtained was relevant. In fact, that precisely is in our favor. A lot of this evidence he would have obtained and could have obtained through discovery in any event. That's a separate issue. He might or might not have been able to get it all and he might have got it under a protective order. That's correct. And he certainly wouldn't have gotten communications to Microsoft's counsel evaluating his claims. That's right. And he also sent apparently some of that, although maybe it couldn't be determined precisely what because of lack of records. But he sent that on to his counsel. He did send some of that on to his former counsel, Your Honor. But again, getting back to your question about nexus, this Court has said that dismissal is appropriate only where the party's actions lead to the inference that their case lacks merit, that Mr. Jackson may have obtained and short-circuited the case that says that. And you're saying it, give me the – give us the sites and I'll take a look at it. But it doesn't – I mean, frankly, under Halico and Anheuser-Busch, it doesn't seem to me, at least as one member of the panel, that there's such a stringent nexus requirement. I think it's just one factor and this relates to the case. But go ahead. Your Honor, Focine, Gailstead, Anheuser-Busch, every one of them states that as a matter of due process, it must relate to the merits of the case. And in fact, that principle goes back. This Court cited it in Focine, goes back to Hovey v. Elliott, which is an 1897 U.S. Supreme Court case. But doesn't this data that was stolen relate to how this case – I mean, it could relate to how this case would be tried? That's not the test, Your Honor. The test – Is that right? You say that's not the test. But isn't it true that the information would relate to how the case could be tried? Some of the evidence that he had – Yes, is that correct? It is potentially – he took evidence that's potentially relevant, yes, Your Honor. And then you say that's not enough. Right. That the evidence has to be such as to show his claim has no merit. This Court has said that due process requires precisely that in half a dozen cases and those that I mentioned to you. Again, no case affirming a default judgment or dismissal has involved the situation in this circuit where a party obtained evidence from the other party outside the discovery process. Every single case where this Court has found due process to be satisfied involved either the manufacturer of evidence that was helpful – the party manufactured evidence to help the case or deprived the other side of evidence helpful to their case. Mr. Jackson didn't deprive Microsoft of anything. They had this evidence at all times. And the Anheuser-Busch case, which the district court relied heavily upon, exactly proved that. Ms. Beardsley, who was the sanctioned party in Anheuser-Busch, had concealed evidence for three years proving that Anheuser-Busch had a meritorious defense to her counterclaim on the merits. That's the issue. Mr. Jackson's deception only relates to how he got the evidence, not – You know, what bothers me a lot – I'm deeply troubled by this case – is it seems to me that in a lot of these other cases, what they're dealing with is, you know, discovery disputes. Someone holds back information that they should have revealed, and then you have a question of when do you make dismissal a sanction for that kind of discovery misconduct? But here we have misconduct that the district court has found – and I say this not being critical of Mr. Jackson or, you know, whether there were extenuating circumstances or whether she might be wrong, but I'm just saying she made a finding of conduct that is possibly a crime in a couple of respects. Stealing data, paying for data to be stolen. That includes proprietary data and perjured testimony. And I'm not sure that those discovery dispute case standards, you know, kind of apply in such a clear way when you have such extreme conduct. So it seems hard for me to think that it's outside the pale for a district court to dismiss a case in these circumstances. Your Honor, and again, I make no apologies for what Mr. Jackson did. It was clearly improper. He stepped over the line. But the Fosene case is really the one most directly on point. In that case, that was not a discovery dispute. And, in fact, the conduct of the litigant there, I submit, in many ways was worse. And that's the case, if you recall, where a couple of weeks before trial, the defendant went off to France. He then had his sister, a nurse, fake a doctor's excuse saying that he was ill. He then had tried to pressure the doctor to testify that he, in fact, had written the note when, in fact, he had not. He lied to the court about the fact that French medical custom permitted this. The district court dismissed on the basis that this was outrageous conduct. And this court reversed on the basis of due process. And in that case, it's worse because there was actually a manufacturer of evidence. They created a fake letter from a doctor. And this Court said, as reprehensible as that conduct is, due process does not permit dismissal. And that – because that has nothing to do whether or not the underlying claims in the dispute are meritorious. The letter from the doctor in that case is to give him an excuse to miss his deposition. To miss his trial. So, I mean, it's – Well, actually, Your Honor, this Court has repeatedly held that failure to show up for your deposition or for trial is sufficient to, in fact, enter the ultimate sanction. But it's still – it's like issues relating to people producing evidence they're supposed to produce or not producing evidence they're producing something that they, you know, manufactured in some way or slanted or exaggerated. It's really different from criminal conduct. And so where – when the district court was trying to explore what happened, Mr. Jackson, as is his right, took – takes the Fifth Amendment. So that permits the district court to draw adverse inferences. That's right. So, therefore, the factual story that she found is, you know, maybe more extreme than reality. But that's what she found. Well, again, I understand. And we can't show her facts with clear evidence. But, Your Honor, that's not the question. Even assuming – Mr. Jackson, by the way, has never been charged with any sort of crime at all related to this. But that being said, that's the point. Due process does not – prohibits him from losing his claim of race discrimination for, assuming the Court found this, lying to the Court about a collateral matter. Lying over repeated three days of hearing? It's still collateral, Your Honor. And in Fostein, it was over a several-day period as well. It's a collateral matter. Whether or not Mr. Jackson got materials – and, again, Microsoft had all these materials, so they weren't deprived of anything. How he got this CD and how much he read this says nothing about whether or not Microsoft discriminated against Mr. Jackson on the basis of race. Due process requires that connection. I'm certainly not arguing with the fact that Mr. Jackson should have been sanctioned. We concede that. The question is, when is the ultimate sanction proper? And due process limits it only to those – that conduct that would confuse with a rightful decision of the underlying claims on the merits. That is what this Court has said time and time again. That's not what we have here. And, again, every one of the cases where this Court has upheld default or dismissal has revolted from conduct on the merits. And that's the Anheuser-Busch case, the Valley Engineers case, the Wilde case, the Televideo, Combs, Estrada, Professional Seminar, the Wanderer case. Every one of those involved misconduct where either the party manufactured evidence to help his claims or hid evidence from the defendant that helped the defendant. In some ways, though, what's happened here is more serious than those cases. And the Court in those cases may have been adopting, you know, that kind of phrasing to distinguish between routine discovery disputes that happen in every case. I respectfully disagree, Your Honor. Again, I think this is – the Court has been very clear about due process, and it goes back to an 1897 Supreme Court case. The fact of the matter is lying about a collateral matter, whether you do it once or three times, does not permit the district court to dismiss your case. That is with the teaching of due processes. There is no case that this Court has ever affirmed dismissal where the misconduct did not relate to the evidence on the merits of the claims or the defense. Let's assume that Mr. Jackson wanted to go to trial and wanted to give false testimony about matters relevant in the case. Then you would say there could be a dismissal. Actually, Your Honor, that's really what we have the adversary system for. Are you saying then there could be a dismissal? I am saying, Your Honor, if you've given – there are circumstances where, when it comes to the fraud on the Court, which we don't have here, that a judge might be able to impose the ultimate sanction. But let's go to the – his case is an employment case. It would have been tried under McDonnell-Douglas-Verdeen framework. As a practical matter, those cases boil down to whether the evidence – the defendant has given a true or a false reason for its adverse conduct. Somebody in those cases, as a matter of definition, is lying. And, in fact, the plaintiff not only has to prove to win that the defendant was lying, but was lying to cover up discrimination. How can the court – how can the defendant get a fair trial if their manager's confidential communications to their lawyers assessing the claims of this claimant have been stolen by the claimant and handed over to his lawyer? You are correct, Your Honor. The district court did not focus on that question. The proper focus should be, did Mr. Jackson receive any information he would not have received in discovery, privileged information, and then did that privileged information so impair Microsoft's ability to go to trial that dismissal is the only sanction? That's the proper inquiry the district court didn't confirm it – perform it. But this Court's cases are instructive that even in those cases where there's been deliberate acquisition of privileged material by one party, the normal remedy is exclusion of the evidence, not suppression. And I cited the United States v. Haynes case, which I think is far more egregious. The government paid the defense counsel's investigator as a confidential informant, and the defense counsel and the defense investigator turned over to the government for confidential attorney-client privilege. This Court refused to dismiss the indictment. And the reason was – and dismissed the case saying dismissal is a disfavored remedy, and most of the time the adequate remedy, the presumptive remedy, is exclusion of the ill-gotten gain. That's an indictment in a criminal case, right? That's right, which is certainly when you have – It's a different matter than a civil case. The Hernandez case shows the public policy is certainly strong. And those are government attorneys committing deliberate misconduct. Mr. Jackson is a lay person. There's no evidence he even knew about the attorney-client privilege at the time he obtained this doctorate. He resorted to impermissible self-help. That's understood. That was improper. He'd seen too many 60 Minutes episodes, it sounds like. But the fact of the matter is Microsoft has not – has not been prejudiced, and the only prejudice it could be would be from privileged communications. And even then, the normal remedy would be exclusion of any evidence that Mr. Jackson obtained improperly. Again, Your Honor, this is a case unlike the other cases where dismissal has been upheld. There was no court orders that were violated. There were no lesser sanctions imposed. He never received any warning. And the cases – Isn't theft – I mean, if it is a theft, which I guess I have to read the judge's findings to say that he paid someone to steal this data, so it's theft, isn't that more serious than violating a court order in a discovery matter? Your Honor, a civil case is not the place to punish whatever infractions that Mr. Jackson may have committed. It's not a place for punishment, but of what – what the inherent powers of a district court are to police its process and, you know, and make a decision. Your Honor, I agree, but due process limits that. And the Focine case involves at least as much, if not more, conduct that's deceptive misconduct. And again, this Court has never affirmed a dismissal and has overturned every dismissal where the conduct involved did not undermine the decision – the Court's ability to get a rightful decision. The fact that Mr. Jackson may have stolen documents, the fact that Mr. Jackson tried to protect himself and Mr. New from what happened doesn't mean Microsoft didn't discriminate him on the basis of race. There's no connection between the two of them. The fact is, you know, a company sometimes discriminates against people who might even have a problem telling the truth. That doesn't mean he didn't get discriminated against. And that's the problem here, is the Court certainly had the ability to take action, but it couldn't take action violating due process. I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the Court. I'm Nancy Abel from Microsoft. This case represents 18 months of egregious misconduct of every sort. Mr. Jackson's misconduct permeated every aspect of this case. After he filed it, he participated in securing this stolen property. He used it. He held it for 10 months before his deposition, during which time, as the district judge noted, he spent days upon days, hours upon hours, culling through it. He printed out those documents that he thought were, quote, unquote, valuable to his case. He sent them in hard copy, along with the CD, to his lawyers two weeks before his deposition. So before his deposition, for 10 months, he is studying Microsoft's privileged attorney-client communications. To say to this Court that he didn't know these were privileged is simply belied by the record. Page after page in the supplemental excerpts of record, there is identification of hard copy documents that Mr. Jackson printed off of that CD, physically sent to his lawyers, and that his lawyers physically brought into the deposition room with him and produced. For example, at page 331, I am reading here on the record in his deposition, as I'm identifying these documents that have been handed to me in the deposition for production. An email from Mary Ellen O'Brien to Pete Hayes, among other things, et cetera, with a carbon copy to reflecting a series of privileged attorney-client communications. An email of July 11, 2000, from Mary Ellen O'Brien to Tracy Turman and Richard Sauer, among others, of LCA, Law and Corporate Affairs, that's Microsoft in-house counsel, requesting legal advice. Another July 11 email from Mary Ellen O'Brien to, among others, Richard Sauer, Microsoft Legal, and Ellen Dwyer of Kroll and Moring, outside counsel for Microsoft in the Ron Jackson matter, reflecting a series of privileged attorney-client communications. This judge has made a finding that Mr. Jackson had attorney work product documents about his claims and that he had attorney-client privileged communications. How about Mr. Subit's argument? How do you answer their argument that to get the ultimate sanction, you must show that Microsoft's defense is somehow prejudiced? Although we might presume all these attorney-client products would help the plaintiff and hurt Microsoft, but how do we know that if we don't have specific findings? I'll just say the best I saw, I saw the judge make explicit findings on prejudice, and they're not extremely cursory. It's like a full page of this order on the motion to strike in ER 144. So I've read through all that, and it's fairly powerful, but it's not detailed at the level of one of the documents says such and such, Microsoft will be prejudiced at trial in this way. Those are that kind of data. And, of course, the judge couldn't say that on the record because Mr. Jackson was the lead plaintiff in a class action. At the time that this case was pending, there were still other individual plaintiffs in the case from his same facility. So if the judge had disclosed in an order or in oral statements in the courtroom what the content was, certainly that would have then constituted a very serious waiver of Microsoft's privilege. The judge had a huge file for in-camera inspection of these documents, and she specifically does note on page 121, which is her oral order in court, that the documents taken, including it says taking documents that are attorney-client privilege. So the fact that the judge isn't giving the content is clearly understandable here. It is further clear, though, that the judge is making absolutely clear that Mr. Jackson has communications about our strategy in his case. That does deprive us of a rightful decision on the merits because he's been able to factor that in, and his lawyer's been able to factor that into their deposition strategy. He had it for 10 months before his deposition. And he's shown information that he won't identify for us to others. So others are tainted. We don't know who they are because he won't tell us all of them, notwithstanding being asked to. He won't tell us specifically what he's shown them. So he's got this absolute stash of privileged materials, and we don't know who else out there is tainted. And moreover ---- I have a question for you. I see, and I don't have the oral ruling, but I have the order granting motion to dismiss, et cetera. And at that page ER-144, there's a specific finding about plaintiff's clear reliance on the stolen documents and the preparation of his case making dismissal more appropriate. But is there any place where it's made clear that those documents do show the strategy? In other words, they're privileged. But is there anything that makes clear that they show a Microsoft strategy? Yes, Your Honor, and I will attempt to find the citation. The Court clearly notes that it ---- that the documents cover Microsoft's strategy. It says the manner in which they would choose to respond to Mr. Jackson's allegations of mistreatment by Microsoft. Where is that? That's line 12 of ER-144. It says the manner in which they would choose to respond to Mr. Jackson's allegations of mistreatment by Microsoft. Okay, I was back at 143 for a minute, so let me see this. I guess I was quoting 143 a minute ago. Okay, I see that. All right. It lines 11 to 13 of 144. But there's more. This isn't simply a case where Mr. Jackson has been able to work and do a strategy, our privileged communications. He has precluded us from obtaining a rightful decision on the merits because after 18 months, this case is pending. As the judge notes in her order, we are no closer because of his continued lies and continued failures to respond to knowing what's the universe of people that has the stolen data, who provided documents that he's ripped the identity off of. He does this after his case is filed, and he tells us that he does it specifically, quote, that was the most important info that I wanted to conceal from you guys. So here is a plaintiff who at every turn is making it impossible for us to know who's going to come into the courtroom biased, what other materials might exist. Microsoft has tens of thousands of employees. It's not reasonable for us to go and consider every current and former employee and try to ferret out what the sources of Mr. Jackson's evidence might be. It's his obligation to truthfully and thoroughly respond to discovery, and he didn't do that. Now, he has a clear warning. After two days of repeatedly lying in his deposition, we file a motion to dismiss. He responds to the court by filing a declaration that is littered with statements that provably became known and seemed to be false by the court. So he's now doing more than simply inflicting improper conduct in the discovery process. He's now trying to avoid the dismissal of his case, and he's using the process of the court to come forward with yet another story. So the court holds an evidentiary hearing, and at that hearing, Mr. Jackson apparently is now going to tell part of his story. He still won't tell us the identities of people that provided documents and the material that he shredded off of it, tore and shredded, but he does say that he got the CD from Mr. New. And that turned out to be false, too. So now he's lying in the face of the court. He also says he hasn't talked to Mr. New since his deposition. But what we found out at the next evidentiary trial is that he lied to the court about that, too. This is Mr. New as a material witness. Mr. Jackson is concealing key conversations that occurred between this individual, and he explains in court in December that he did it through this elaborate scheme so there would be no record on his phone bills where they go through their mothers as intermediaries. Now, after that, Mr. Jackson is told that he's coming back into court with Mr. New so that the judge can assess credibility. And when he comes back into court, the lies just get blown totally out of proportion now. Now they're absolutely extreme all over the place. And he goes at that point, he's got a criminal lawyer in tow in the courtroom. Surely he knows how serious this is. The judge has told him. He's said in his affidavit or declaration. Well, it's on a motion. These are three days of hearings or almost part two and plus part of another day of hearings specifically on a motion to dismiss his case. Yes. As a sanction. That's right. And we certainly got notice that dismissal of his case might be an outcome. That's right. And in his August declaration, he's pleading with the court not to dismiss his case. So he knows this is a possibility. So his response to the severity of all this, to the judge telling him we're coming back to assess credibility, is to perpetrate an incredible series of lies in the courtroom. Now, this case is not just about attorney-client privilege communications being stolen and used and factored in, an attorney work product being factored into strategy. This case isn't simply about witnesses not being identified and, in fact, being hidden, evidence being shredded. This case is about an individual who has made it clear defiantly that he will do whatever is necessary that he thinks will advance his case, and that includes repeatedly lying in the courtroom. There is no right to have a trial when one so abuses the processes of the court. And so what do you say to Mr. Jackson's argument here to us that due process requires, no matter how serious the wrong was or whatever the abuse was, that due process requires that it must be shown that it is in some way pertinent to whether, you know, Microsoft discriminated against him in order to dismiss his case? That is not the standard. And such a standard would be nonsensical because what that's saying is that if a defendant employer in a discrimination case has a totally meritorious case, in other words, there's nothing that lying, cheating, stealing could do to interfere with the defendant employer's ability to put on a strong case and win it, then under counsel standard, you could do any type of misconduct and still get your day in court. And in this case, to send a message that one of the most highly publicized employment discrimination class actions in the history of employment litigation on 60 Minutes across the globe, it's all over the Internet, in papers of all different languages, that the end result is this court is saying you can engage in all of this egregious misconduct and you still get your day in court. That is wrong. And no case in this circuit or anywhere else has ever so held. I'd like to address in my remaining moments a few additional points. First of all, faux scene. That was an incident involving whether or not a trial would be held on a particular day. That is not a case of 18 months of absolute mockery of the discovery process. There's no evidence in that case that the defendant was prevented from getting any information to which it was entitled in discovery, and certainly its attorney-client privilege and attorney work products were not violated. Moreover, HICS. HICS involves a trial based upon truthful testimony. The test is not whether people are lying in discovery. The question is whether the reasons the employer articulated pre-case was an honest reason. There is nothing in the HICS cases that suggests that anyone has the ability to continue on in litigation by coming into court and perpetrating falsehoods in a courtroom. Finally, in the reply brief, Mr. Jackson makes the argument that there was nothing that seemed to be different between October 31, when the judge said she was going to impose sanctions less than dismissal, and December 12. Well, that's simply not the case. A lot was different, very different. And let's look at some of those things. First of all, on October 31, the court was not aware that Mr. Jackson, in fact, had paid $1,000 to obtain Microsoft's privileged attorney-client communications, work product, and all sorts of other proprietary and confidential personnel documents. On October 31, Mr. Jackson, the district judge was not aware that Mr. Jackson had lied in her courtroom on October 31. When the judge held the second hearing in December, Mr. Jackson testified as to several things that showed that his testimony on October 31 had been false, including the fact that he had had conversations with Mr. New between the deposition and October 31 that he had denied. She also learned that Mr. Jackson, in fact, had accessed those very files after the first day of his deposition that contained our attorney-client privileged communications, when five times in five different sets of questioning on December 12, he denied having accessed those. He said he didn't know that the file was on his hard drive. He didn't know how to open it, et cetera. And both experts, his and Microsoft's, came into court and showed the district court that, in fact, after I admonished him on July 26, you are in possession of our attorney-client privileged communications. You're not entitled to have those. Bring all copies with you tomorrow. You're not entitled to see that. He went home that night, according to both experts, and he opened those files. That is egregious. He knew exactly what he was doing the night of July 26, after he had been admonished. And it wasn't little. The district court specifically made a finding that he had accessed, quote-unquote, vast amounts of information. Moreover, the Court didn't know on October 31 that Mr. Jackson would do what he did, which is invoke the Fifth Amendment about his involvement in the commission of a crime, his paying $1,000 for the hard drive. And when asked and given a chance, finally in court again, to tell us in the clearest possible terms, my question was something to the effect of, Mr. Jackson, would you please tell us in the clearest possible manner what the $1,000 check has to do with the theft of Mary Ellen O'Brien's hard drive? He invoked the Fifth Amendment. He never came to it. He's entitled to invoke it, but, of course, the district court was entitled to draw an inference that there was a connection. That's right. But what he's doing by invoking it is he's making it impossible ever for Microsoft to know the universe of taint. Tainted witnesses, destroyed evidence, doctored evidence, missing evidence. We don't know. With all respect, Your Honor. What can we do about that, though? I mean, that isn't really before us. I mean, that affects the ongoing. This case is still going on, right, with other plaintiffs? Some is still pending, yes, Your Honor. But not as a class action. That's right. But the issue here is whether Mr. Jackson had to suffer the consequence, whether the court abused her discretion in saying Mr. Jackson can't go forward when he ties Microsoft's hands so severely behind its back. The court properly found prejudice, and consistent with Ninth Circuit precedent, which we've cited in our brief, the judge certainly had dismissal as one of the options available to her. Thank you very much. Mr. Subic, please. Thank you, Your Honor. Yes, I'll respond to a number of points. This whole issue that the motion for dismissal gave Mr. Jackson notice of the sanction here is a non sequitur. Microsoft filed a motion in August of 2001 because Mr. Jackson had, they said, received unauthorized documents. That's what the dismissal motion was about. That is not why Judge Peckman dismissed this case. So what was the relief they sought in their motion? They sought dismissal. But Judge Peckman ordered dismissal not for that, but because she believed he had come to her court and lied. That's why she granted dismissal. But then she also made a finding that not only had he received Microsoft documents, but that he had paid someone to steal them. I'm not saying he did, but I'm saying she made such a finding based on his invocation of the Fifth Amendment and the other circumstantial evidence. That's right, Your Honor. That's congruent with Microsoft's request for the sanction of dismissal. It's just more serious. Well, the fact of the matter is the Court made very clear, and we've cited it, is that the reason she's – the Court said this. This is not my words. The reason I'm dismissing this case is his repeated falsehoods. That is what Judge Peckman said. That's not all she said. For goodness sake. She noted the prejudice to Microsoft. She noted that she had tried to consider less drastic alternatives, but it wouldn't work. She covered in her reasoning for the sanction all the basic factors under our precedents, whether we agree or disagree with. I mean, she didn't just say, I'm doing it because he's lying. That is, she said, that is the primary reason. I agree. It's the secondary reason she dismissed the case because of his receipt and review. Let me get to the prejudice point, Your Honor, because counsel only read you one of the sentences on page 144. This shows the error of the way the district court – legal error in terms of what she said was prejudice. What she said in the – she directed you to lines 11 through 13. Mr. Jackson had in his possession memoranda from Microsoft counsel. Mr. Jackson also had in his possession for 10 months documents regarding the evaluation and compensation of other employees. Microsoft has suffered prejudice that can only be cured by dismissal. That shows the district court, in her mind, lumped it all together. She never separated out in her finding of prejudice the prejudice from documents that he would have had a right to versus the privileged one. And again, the question is, did he see documents that so prejudiced Microsoft they can't get a fair trial? The presumption in this court is that no, exclusion is normally the rule. Let me then, again, get back to the issue. She didn't consider the two key factors. One, Your Honor, she didn't consider due process. That – and second, she didn't consider the Hernandez factor, that this is a civil rights case. And finally, she appears to have penalized him for his Fifth Amendment. In sum, Your Honor, just one thing. In her conclusion, she says, Having considered the prejudice caused by Mr. Jackson to defendant and to this court, having considered and rejected less drastic sanctions, having drawn the requisite negative inferences from plaintiff's invocation of his Fifth Amendment privilege. She's not saying she's punishing him for taking the fail. She's saying she's drawing requisite inferences and negative inferences. She concludes dismissal is the only appropriate remedy. She's really covering all the grounds. But, Your Honor, covering all the grounds doesn't solve the problem if she makes an error of law in doing so. Well, if she's wrong under due process. That's right. Under due process theory. And that is our primary argument, Your Honor. And an error of law is an abuse of discretion. That's Cooter v. Hart and Garrett. That's a Supreme Court case. So that's our argument. It's due process, Your Honor. And due process allows this case to go forward, even though Mr. Jackson did many things improper. This Court should remand for lesser sanctions. Okay. We appreciate the vigorous argument. Unless one of the judges has a question. No? No questions. I think we've concluded. The case shall be submitted. We thank counsel for their arguments. I rise.
judges: Lay (8th Cir.), Ferguson, Gould